# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ROANOKE DIVISION

| | |
|---|---|
| HERSCHEL G.[1], | ) |
| | ) |
|         **Plaintiff,** | ) |
| | ) |
| v. | )     **Civil Action No. 7:18CV266** |
| | ) |
| ANDREW SAUL[2], | ) |
| **Commissioner of Social Security,** | ) |
| | ) |
|         **Defendant.** | ) |

## REPORT AND RECOMMENDATION

Plaintiff Herschel G. ("Herschel") filed this action challenging the final decision of the Commissioner of Social Security ("Commissioner") finding him not disabled and therefore ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act"). 42 U.S.C. §§ 401–433. Herschel alleges that the Administrative Law Judge ("ALJ") erred by: (1) improperly weighing the medical opinions; (2) finding he can perform his past relevant work as it is generally performed; and (3) failing to properly consider his cervical and thoracic disc degeneration.

I conclude that substantial evidence supports the Commissioner's decision in all respects. Accordingly, I **RECOMMEND DENYING** Herschel's Motion for Summary Judgment (Dkt. No. 12) and **GRANTING** the Commissioner's Motion for Summary Judgment (Dkt. No. 13).

---

[1] Due to privacy concerns, I am adopting the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that courts use only the first name and last initial of the claimant in social security opinions.

[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## STANDARD OF REVIEW

This court limits its review to a determination of whether substantial evidence exists to support the Commissioner's conclusion that Herschel failed to demonstrate that he was disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations and alterations omitted). The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Herschel filed for DIB in August 2014, claiming that his disability began on March 1, 2013, due to prostate cancer (stage II), type II diabetes, degenerative disc disease, leg numbness, limitations in sitting or standing, carpal tunnel syndrome, anxiety, panic attacks, loss of right hand grip and strength, chronic back pain, difficulty raising arm, and stomach ulcers. R. 162, 165, 182. Herschel's date last insured was December 31, 2018; thus he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 179; 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency denied Herschel's applications at the initial and reconsideration levels of

---

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects his ability to perform daily activities or certain forms of work. Rather, a claimant must show that his impairments prevent him from engaging in all forms of substantial gainful employment given his age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

2

administrative review. R. 57–64, 66–74. On February 16, 2017, ALJ Geraldine H. Page held a hearing to consider Herschel's claims for DIB. R. 27–56. Counsel represented Herschel at the hearing, which included testimony from vocational expert ("VE") Asheley Wells. On June 9, 2017, the ALJ entered her decision analyzing Herschel's claims under the familiar five-step process[4] and denying his claim for benefits.[5] R. 15–27.

The ALJ found that Herschel was insured at the time of the alleged disability onset and that he suffered from the severe impairments of obesity, prostate cancer status post prostatectomy, right upper extremity neuropathy, diabetes mellitus II, chronic obstructive pulmonary disease, and right shoulder arthralgia.[6] R. 14. The ALJ determined that these impairments, either individually or in combination did not meet or medically equal a listed impairment. R. 16. The ALJ specifically considered listings 1.02 (major dysfunction of a joint), 1.04 (disorders of the spine), 3.02 (chronic respiratory disorders), 9A(B)(5)(a)(ii) (chronic hyperglycemia), 11.14 (peripheral neuropathy), and 13.24 (prostate gland – carcinoma), as well as obesity. R. 16–17.

---

[4] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[5] Herschel was 58 years old on the date of the ALJ's opinion, making him a person of advanced age under the Act.

[6] The ALJ determined that Herschel's hypertension, hypertriglyceridemia, allergies, peptic ulcer disease, pharyngitis, gastroparesis, cervical and thoracic degenerative disc disease, anxiety, and depression, are nonsevere. R. 14–16.

The ALJ concluded that Herschel retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 17–18. Specifically, Herschel can frequently handle, feel, finger, and reach overhead with the right upper extremity, can occasionally climb ramps and stairs, balance, kneel, crouch, and stoop, can never crawl, climb ladders, ropes, or scaffolds, should avoid concentrated exposure to extreme temperatures, excess humidity, and pulmonary irritants, and should avoid all exposure to hazardous machinery, unprotected heights, and vibrating surfaces. R. 18. The ALJ determined that Herschel was capable of performing his past relevant work as a biomedical equipment technician as it is generally performed. R. 22. Thus, the ALJ determined that Herschel was not disabled. R. 22. Herschel appealed the ALJ's decision and the Appeals Council denied his request for review on April 14, 2018. R. 1–3.

## **ANALYSIS**

Herschel alleges that the ALJ erred by: (1) improperly weighing the medical opinions of his treating physician and therapist; (2) finding he could perform his past relevant work as a biomedical equipment technician as it is generally performed; and (3) finding his cervical and thoracic disc degeneration not a severe impairment.

### A. Medical History

Herschel was diagnosed with prostate cancer in June 2014, and underwent prostate surgery in October 2014. R. 280, 348–49. At follow-up appointments through 2016, he initially indicated he was experiencing "some incontinence" (R. 392–94), but later reported no incontinence (R. 404, 408), and "occasional stress incontinence." (R. 412). Herschel complained of pain and numbness in his right upper extremity, and nerve studies in July 2014 showed moderately severe right carpal tunnel syndrome. R. 284–85, 291. Herschel also complained of back and neck pain, beginning in August 2016, and an MRI showed degenerative disc disease,

degenerative joint disease, and spondylosis.[7] R. 407, 419–20. On examination, in December 2016 he continued to complain of back pain, and indicated that taking Tylenol and meloxicam provided "moderate [pain] relief." R. 411–12. At the hearing before the ALJ, Herschel stated he was not receiving any treatment for his back pain, other than over the counter medications. R. 32.

Herschel had complained of depression to his providers, but did not agree to counseling until January 2017, at which point he began seeing therapist Linda Ely, DNP. R. 392, 412, 417. After a few appointments, in February 2017, Ms. Ely indicated Herschel had normal mood, affect, and mental status, was responding to treatment as expected, and assessed a Global Assessment of Functioning ("GAF") of 70. R. 427.

1. Medical Opinion Evidence

State agency physicians Wyatt S. Beazley, III, and Tony Constant, M.D., reviewed the record and both concluded that the evidence available in the record did not show disability. R. 63, 74. They noted that the evidence was insufficient, stating, that Herschel was responsible for providing evidence to support his claim, and that "although [Herschel was asked] to furnish additional evidence, [he has] not done so." Id. Likewise, state agency psychologists Julie Jennings, Ph.D. and Howard Leizer, Ph.D., denied the claim for insufficient evidence, noting Herschel did not respond to requests for additional evidence. R. 62–72. However, the ALJ gave all these opinions limited weight on the grounds that subsequent medical evidence provided sufficient documentation to find both nonsevere and severe impairments. R. 16, 21.

---

[7] Herschel also complained of right shoulder issues, including decreased rotation, and an x-ray in June 2015 showed degenerative arthritic changes. R. 385. At a follow up appointment in August 2015, after completing physical therapy, he complained of some achiness, but indicated his pain score was only 1 out of 10, and his symptoms were improving. R. 372. On examination, his right shoulder had full range of motion, no muscle asymmetry, and negative stability tests. R. 373.

In January 2017, Herschel's primary care doctor, David D. Bradley, M.D., completed a Medical Source Statement (Physical), indicating that Herschel can only infrequently sit, stand, walk, and stoop, would likely miss five days of work a month due to his impairments, would be off task 50% of the workday due to pain, and would need to lie down 30 minutes a day due to back pain, among other limitations. R. 415–16. The ALJ gave this opinion partial weight, finding that it overstated Herschel's limitations. R. 21.

In February 2017, Linda Ely, DNP, Herschel's therapist, wrote a letter titled "Disability Determination." R. 417. Ms. Ely noted that she had seen Herschel for four therapy sessions for anxiety and depression, and indicated that Herschel is "not able to work" due to his incontinence. R. 417. The ALJ gave this opinion little weight. R. 21.

**B. Medical Opinions**

Herschel argues that the ALJ's rejection of Dr. Bradley's opinion is not supported by substantial evidence. Pl.'s Br. at 8–9, Dkt. No. 12. Herschel further argues that because the ALJ gave only little weight to the bulk of Dr. Ely's opinions, the ALJ erred by giving great weight to Ms. Ely's GAF scores. Id. The Commissioner counters that substantial evidence supports the ALJ's assessment of Dr. Bradly and Ms. Ely's opinions.

    1. <u>Dr. Bradley - Treating Physician's Opinion</u>

Dr. Bradley's January 2017 opinion found physical limitations that, if wholly credited by the ALJ, would preclude competitive employment, including that Herschel would miss five days of work a month, be off task 50% of the time, and could sit, stand, and walk, only very rarely, or some days, not at all. R. 415–16. However, the ALJ gave Dr. Bradley only partial weight, finding that the record supported some limitations, but not the extent imposed by Dr. Bradley. R. 21.

The social security regulations require that an ALJ give the opinion of a treating source controlling weight if he finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."[8] 20 C.F.R. § 404.1527(c)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001); Brown v. Comm'r Soc. Sec. Admin., 873 F.3d 251, 269 (4th Cir. 2017) (noting that "the ALJ is supposed to consider whether a medical opinion is consistent, or inconsistent, with other evidence in the record in deciding what weight to accord the opinion"). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). The ALJ must give "good reasons" for not affording controlling weight to a treating physician's opinion. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); Saul v. Astrue, No. 2:09–cv–1008, 2011 WL 1229781, at *2 (S.D.W.Va. March 28, 2011). Further, if the ALJ determines that a treating physician's medical opinion is not deserving of controlling weight, the following factors must be considered to determine the appropriate weight to which the opinion is entitled: (1) the length of treatment and frequency of examination; (2) the nature and extent of the treatment relationship; (3) the opinion's support by medical evidence; (4) the opinion's consistency with the record as a whole; and (5) the treating physician's specialization. 20 C.F.R. §§ 404.1527(c)(2)-(5), 416.927(c)(2)-(5). "None of these factors may be omitted or disregarded by the ALJ in weighing the value of a treating physician's opinion." Ricks v. Comm'r, No. 2:09cv622, 2010 WL 6621693, at *10 (E.D.Va. Dec. 29, 2010).

---

[8] The social security regulations regarding the evaluation of medical opinion evidence have been amended for claims filed after March 27, 2017. See 20 C.F.R. §§ 404.1520c, 416.920c (setting out rules for claims filed on or after March 27, 2017, including that no specific evidentiary weight, including controlling weight will be given to any medical opinions). However, as this claim was filed prior to the effective date of the amended rule, I will apply the rules in 20 C.F.R. §§ 404.1527(c), 416.927.

Here, the ALJ appropriately considered these factors and the record, in determining that the opinion of Dr. Bradley merited only partial weight.[9] The ALJ acknowledged that Dr. Bradley was a treating physician, and that the record supported some limitations for lifting and carrying, postural maneuvers, and the use of the right upper extremity, but continued, "[Dr. Bradley's] findings are not consistent with the overall record because they overstate [Herschel's] restrictions." R. 21. In support, the ALJ pointed to specific portions of the record, writing:

> For instance, following recovery from his prostate surgery, [Herschel's] examinations are unremarkable and do not document problems with incontinence. Furthermore, the record does not show significant problems with sitting, standing, or walking, as [Herschel] has only slightly reduced strength in his fingers, but full strength at 5/5 otherwise, and has received only routine and conservative management with medication and physical therapy. Moreover, the evidence does not document a diagnosis for vertigo.

Id. The ALJ's detailed analysis of the medical evidence elsewhere in the opinion provides further support for her conclusion that the "overall record" does not support Dr. Bradley's restrictions. R. 19–20. The ALJ noted that Herschel had not undergone surgery for his carpal tunnel and did not wear a brace, and that on physical examination he had only slightly decreased strength in his right fingers, a stable gait, and did not require an assistive device for walking. R. 19. Related to Herschel's right shoulder issues, the ALJ noted he had improved symptoms following physical therapy, with full shoulder and neck range of motion, no atrophy, intact sensation, and shoulder instability, and no doctor has recommended he have surgery or receive injections.[10] R. 20.

---

[9] Herschel also argues that Dr. Bradley's records regarding Herschel's incontinence contained an "arguable inconsistency," regarding whether Herschel continued to experience incontinence in the years following his prostate surgery. Pl.'s Br. at 12, Dkt. No. 12. However, I find that the ALJ appropriately considered the records, and to the extent that there was any inconsistency in the record regarding the length or extent of Herschel's incontinence following his prostate surgery, it did not effect the ALJ's conclusions regarding disability. While the ALJ acknowledged that Herschel testified at the hearing that he has worn adult diapers since 2014, as he has to use the bathroom once an hour for 10 to 15 minutes, there is nothing in the record to support this level of incontinence. R. 18.

[10] Herschel also argues that the ALJ failed to consider that he conservatively managed his carpal tunnel syndrome and shoulder issues because he could not afford surgery. However, Herschel does not point to anywhere

Likewise, regarding Herschel's back pain, the ALJ acknowledged that the record documented complaints, but that objective studies and examinations did not show significant problems, and that he had not seen a specialist, received injections or a TENS unit, or had a doctor recommend surgery. R. 15.

The ALJ adequately considered the factors outlined in 20 C.F.R. § 416.927(c)(2) and justified the weight afforded with specific reasons, including that the records do not show significant continued problems with incontinence, nor with sitting, standing, or walking, and further show only routine and conservative management of his impairments, involving medication and physical therapy.[11] Having reviewed the record as a whole, I conclude that substantial evidence supports the ALJ's decision to discount the opinion of Dr. Bradley.

2. Ms. Ely, DNP's Opinion

Herschel argues that because ALJ gave little weight to Ms. Ely's February 2017 letter titled "Disability Determination," the ALJ should not have given great weight to the GAF scores assigned by Ms. Ely during outpatient therapy. In her February 2017 letter, Ms. Ely indicated that Herschel has been in therapy with her for anxiety and depression. R. 417. Ms. Ely referenced mental health "symptoms of a mood disorder" and "OCD symptoms" but also referenced symptoms related to his physical health including that he is "not able to work r/t being incontinent" and has diabetes, carpal tunnel issues, and a shoulder injury. Id.

---

in the medical record where a doctor recommended surgery for these issues, which Herschel declined for financial reasons.

[11] The ALJ wrote that "all [Herschel's] medical records in 2016 reflect no incontinence. R. 19. While records from his March and August 2016 visit with Dr. Bradley indicated no incontinence (R. 404, 408), the record from December 2016 indicated "occasional stress incontinence." R. 412. However, to the extent this constitutes an error on the part of the ALJ, I find it is harmless because Herschel's records show he did not complain of significant incontinence in 2016, and certainly not to the extent he testified to at the hearing.

The ALJ gave this opinion little weight, noting that Ms. Ely is not an acceptable medical source, and that Ms. Ely's conclusions regarding Herschel's physical health are outside the scope of her practice, as she is his mental health therapist. R. 21. The ALJ emphasized that Ms. Ely has not set forth any functional restrictions related to Herschel's mental health – indeed, the letter merely states that "[a]ntidepressants may help with anxiety, depression, and OCD, but will not make him capable of employment." R. 417. However, the ALJ did give the GAF scores assigned by Ms. Ely great weight, noting they were "consistent with his limited level of care and lack of mental status findings." R. 16.

Substantial evidence supports the ALJ's decision to give Ms. Ely's opinions in her February 2017 letter little weight, while giving the GAF scores she assigned during multiple outpatient therapy sessions great weight. Ms. Ely, as a DNP, is not an acceptable medical source as defined by the Act. 20 C.F.R. §§ 404.1513, 416.913 (indicating "[w]e need evidence from acceptable medical sources to establish whether you have a medically determinable impairment" and defining acceptable medical sources as licensed physicians, licensed or certified psychologists, and—for limited purposes—licensed optometrists, licensed podiatrists, and qualified speech-language pathologists). The opinions of non-acceptable medical sources are not entitled to any particular weight, and the ALJ is not required to explain the weight given to such opinions unless it might affect the case's outcome. See Adkins v. Colvin, No. 4:13-CV-00024, 2014 WL 3734331, at *3 (W.D. Va. July 28, 2014); see also Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996) (finding no error in ALJ's failure to expressly weigh the opinion of claimant's physical therapist).

Nevertheless, the ALJ has a duty to consider all of the evidence available in a claimant's case record, including evidence provided from medical sources who are not "acceptable medical

10

sources" such as a nurse practitioner. Ingle v. Astrue, 1:10CV141, 2011 WL 5328036, at *3 (W.D.N.C. Nov. 7, 2011) (citing Social Security Ruling ("SSR") 06–03p, 2006 WL 2329939 (SSA)(Aug. 9, 2006); 20 CFR §§ 404.1513(d), 416.913(d)). While evidence from these non-acceptable medical sources cannot be used to establish the existence of a medically determinable impairment; "such sources may provide evidence, including opinion testimony, regarding the severity of the claimant's impairments and [how] such impairment[s] affect the individual's ability to function." Id. (citing SSR 06–03p; 20 CFR §§ 404.1513(d), 416.913(d)); see also Ledbetter v. Astrue, 8:10–CV–00195–JDA, 2011 WL 1335840, at *10 (D.S.C. April 7, 2011) ("[O]pinions from medical sources, even when not 'acceptable medical sources,' are important and should be evaluated on key issues such as impairment severity and functional effects." (citing SSR 06–03p)).

To determine the weight given to the opinion of a source who is not an "acceptable medical source" as defined by the Act, the ALJ should consider: (1) the length of time the source has known the claimant and the frequency of their contact; (2) the consistency of the source's opinion with the other evidence; (3) the degree to which the source provides supportive evidence; (4) how well the source explains his or her opinion; (5) whether the source has an area of specialty or expertise related to the claimant's impairments; and (6) any other factors tending to support or refute the opinion. Beck v. Astrue, 3:11–CV–00711, 2012 WL 3926018, at *12 (S.D.W. Va. Sept. 7, 2012) (citing SSR 06–03p).

Here, the ALJ considered Ms. Ely's professional qualifications, the weight of the evidence supporting her opinion, and her opinion's consistency with the other relevant evidence in the record. The ALJ did not simply dismiss her opinion because she was an "unacceptable medical source," but weighed it along with the other evidence in the record. Indeed, the ALJ

separately considered the GAF scores, which were assigned at outpatient therapy, and the opinion on disability in the 2017 letter, ultimately weighing each differently, because they compared differently to the relevant evidence. Despite Herschel's complaints, this is completely appropriate, and the ALJ did not use the wrong legal standard when weighing Ms. Ely's opinion.[12]

Herschel also states that the ALJ "should have ordered a psychiatric consultative examination." Pl.'s Br. at 13, Dkt. No. 12. However, under the regulations "the ALJ has discretion in deciding whether to order a consultative examination." Bishop v. Barnhart, 78 Fed. App'x 265, 268 (4th Cir. 2003). A consultative examination is only required when the evidence is insufficient to support a decision, and none is needed when the ALJ "get[s] the information [he] need[s] from [claimant's] medical sources[.]" 20 C.F.R. § 404.1519a(a). Here, the ALJ had sufficient evidence in the record to support her decision, thus, making a disability decision without a consultative examination was not an abuse of discretion. Indeed, the ALJ specifically wrote that, though the state agency doctors had concluded the evidence in the record was insufficient, medical evidence provided subsequent to their opinions provided sufficient documentation to find both severe and nonsevere impairments,. R. 16, 21.

C. **Past Relevant Work**

Herschel argues that the ALJ did not "adequately develop the record as to her finding at step four" because she failed to ask the vocational expert whether there were sufficient numbers of biomedical technician jobs at the light level of work in the national economy. Herschel also

---

[12] Herschel also contends, without elaboration, that Ms. Ely "provided sufficient evidence to warrant concern over a lack of concentration." Pl.'s Br. at 13, Dkt. No. 12. However, this argument is not well taken because, as the ALJ noted, Ms. Ely's opinion set forth no functional limitations related to Herschel's mental health, including concentration deficits. R. 21. Further, the ALJ appropriately considered the mental health evidence, including noting that Herschel "has not reported any significant problems in daily functioning from his mental symptoms" and finding his mental impairment nonsevere. R. 15.

complains that the VE testified that she had never personally observed the job of biomedical technician performed at the light level, but instead, typically seen it performed at the heavy level.

At step four, the ALJ found that Herschel could perform his past relevant work as a biomedical technician as it is generally performed, as a light exertional job under the DOT. R. 22. Accordingly, the ALJ found Herschel was not disabled. This is appropriate as, at step four, the ALJ should find the claimant not disabled if he can "perform his past relevant work as he performed it in the past *or* as it is generally required by employers in the national economy." Pass v. Chater, 65 F.3d 1200, 1207 (4th Cir. 1995) (emphasis in original). Thus, the test is disjunctive, and regardless of Herschel's ability to return to his past relevant work as he performed it in the past, the ALJ appropriately found Herschel not disabled at step four when she found Herschel capable of returning to his past relevant work as generally performed. Id.; see also, Johnson v. Barnhart, 329 F. Supp. 2d 751, 755 (W.D. Va. 2004) (finding the ALJ "acted permissibly when he referred to the DOT in determining that [the claimant] was not disabled because he could perform the light level of exertion normally required of security guards, though [the claimant] could not perform his particular, more physically demanding job as a Wal–Mart security guard who occasionally loads heavy items into purchasers' cars."). Further, although the relevant DOT does not address unilateral manipulative restrictions, the ALJ appropriately relied on the VE's testimony, as based on her professional experience. R. 22. Finally, the fact that the VE had never personally observed the job performed at a light exertional level, but instead typically had seen it performed at a heavy level, is immaterial to the analysis here, which instead relies on the job's description in the DOT as it is usually performed in the national economy.[13]

---

[13] The vocational expert testified as follows:

Q: [H]ave you observed [biomedical technician] being performed at the light level?
VE: Never.

13

### D. Degenerative Disc Disease as nonsevere impairment

Herschel argues that the ALJ failed to adequately develop the record at step 2, and erred by finding that his cervical and thoracic disc degeneration was not severe. Specifically, Herschel asserts that the ALJ did not appropriately analyze an August 2016 MRI.

An impairment is non-severe when it causes no significant limitations in the claimant's ability to work. 20 C.F.R. §§ 404.1521(a), 416.921(a). "[A]n impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (citing Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984)). Additionally, an impairment must last, or be expected to last for a continuous period of at least 12 months to be considered "severe." 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii). Herschel bears the burden of proving his degenerative disc disease was severe. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Further, under 20 C.F.R. § 404.1523, the ALJ must consider the combined effect of all of a claimant's impairments "without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 404.1523. "Thus, the issue of whether or not a particular impairment is found severe is only critical if the ALJ finds no severe impairment and ends the analysis at step two; if any impairment is severe, the ALJ must consider all impairments when assessing residual functional capacity." Miller v. Astrue, No. 8:10-1142-HMH-JDA, 2011 WL 1576203, at *15 (D.S.C. Apr. 7, 2011). Consequently, any error by the ALJ at step two is harmless if the ALJ considers the effects of all of Herschel's impairments in

---

Q: And what level do you typically see it performed at.
A: Heavy.

R. 52.

14

the subsequent steps. See Brooks v. Astrue, No. 5:10CV00104, 2012 WL 1022309, at *12 (W.D. Va. Mar. 26, 2012) (citing Miller, 2011 WL 1576203, at *15); see also Gaskins v. Comm'r, No. WDQ–13–1470, 2014 WL 979205, at *5 (D. Md. March 12, 2014); Hammond v. Astrue, No. TMD 11–2922, 2013 WL 822749, at *2 (D. Md. March 5, 2013) (collecting cases).

Here, substantial evidence supports the ALJ's conclusion that Herschel's degenerative disc disease was nonsevere. The ALJ discussed the August 2016 MRI, as well as his examinations and treatment, in depth. R. 15. The ALJ concluded that the objective studies did not reveal any significant problems, and emphasized that Herschel showed only occasional tenderness on exam, but "no step-off or bony deformities, and full strength," had only conservative treatment with medication, and had not "seen a medical specialist, received injections, used a TENS unit, or been recommended to undergo surgery." R. 15.

The ALJ's step two analysis is supported by substantial evidence and should not be disturbed. Further, even if I find that the ALJ erred in her evaluation of Herschel's impairments at step two, such error would be harmless because the ALJ continued with the sequential evaluation process and considered all of Herschel's impairments, both severe and nonsevere, that significantly impacted his ability to work. R. 16. Thus, I find no error on the part of the ALJ in determining Herschel's degenerative disc disease as non-severe.

## CONCLUSION

For the foregoing reasons, it is **RECOMMENDED** that an order be entered **AFFIRMING** the final decision of the Commissioner, **GRANTING** summary judgment to the defendant, **DENYING** plaintiff's motion for summary judgment, and **DISMISSING** this case from the court's docket.

The Clerk is directed to transmit the record in this case Elizabeth K. Dillon, United States

District Judge, and to provide copies of this Report and Recommendation to counsel of record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any objections to this Report and Recommendation within fourteen (14) days hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not specifically objected to within the period prescribed by law may become conclusive upon the parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual recitations or findings as well as to the conclusion reached by me may be construed by any reviewing court as a waiver of such objections, including the waiver of the right to appeal.

    Entered: August 22, 2019

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge